UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

RENEE HELMKE,
        Plaintiff,
vs.                                                                                   Case No.:

CITY OF PORT ST. LUCIE,
        Defendant.
_____/

## COMPLAINT

COMES NOW the Plaintiff, RENEE HELMKE, and sues Defendant and states as follows:

## JURISDICTION

Jurisdiction in this Court is proper under 29 U.S.C. §1331 as this action arises under the Americans with Disabilities Act, 42 U.S.C. §12131.

## VENUE

Venue is proper in this Court as Defendant is a city located in St. Lucie County within the Southern District.

## CONDITIONS PRECEDENT

All conditions precedent to the filing of this suit have been met. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity

Commission on May 3, 2022, which was within 300 days of the discriminatory act. See Exhibit A. Plaintiff received a Notice of Right to Sue on September 6, 2022 and is filing suit within 90 days. See Exhibit B.

## **FACTUAL ALLEGATIONS**

1. Plaintiff has been working for the City of Port St. Lucie as a Special Assessment Accountant since July 10, 2017.

2. Plaintiff has suffered from Lupus and related autoimmune issues, since she was approximately 25 years old and only had minor flare ups.

3. However, over the last few years, Plaintiff has undergone increasing levels of stress that caused more frequent flare ups of her lupus.

4. Due to the increased flare ups, Plaintiff requested and was authorized to take Family Medical Leave on an intermittent basis.

5. When COVID began in approximately March 2020, many employees of Defendant who did not have Lupus or any autoimmune disease were being sent home and permitted to work from home.

6. Due to Plaintiff's Lupus and related autoimmune disease, in March 2020 she verbally asked to work remotely.

7. Beginning in June through August 2020, Plaintiff's supervisor began continually asking her when she was going to return to the office in person

as other staff (without autoimmune issues) were coming back to work in person.

8. In mid-August 2020, Plaintiff put in a formal request for several accommodations, including to work from home.

9. Plaintiff was confident that she could perform all of her job duties at home if she was provided with certain accommodations in addition to allowing her to work remotely from home.

10. Specifically, Plaintiff requested that be given flex time to attend doctor's appointments, meaning that she would be allowed to take time off during the regular workday to attend doctor's appointments, but then would make up the time she missed.

11. Plaintiff also requested additional technology consisting of a 2nd monitor, a detached mouse, and a more advanced version of the Adobe program.

12. While Plaintiff was granted the request to work remotely, she was advised that the remainder of her requested accommodations would have to be determined by her supervisor.

13. Plaintiff's supervisor denied the additional requested accommodations and, in fact, chastised Plaintiff for having made the request.

14. Specifically, Plaintiff's supervisor stated it "took balls" for her to ask for more technology to do her job "while she chooses to work from home."

15. Subsequently, the same supervisor asked Plaintiff how she could be productive at home without a second monitor, which is exactly one of the accommodations that Plaintiff requested.

16. Regardless, Plaintiff found a way to perform the duties of her job remotely from March 2020 to June 2021.

17. While Plaintiff was working from home, she was required to submit a list of tasks completed each week, which other employees without disabilities that were working from home were not required to complete.

18. From the time Plaintiff began working from home, her supervisor continually asked when she would be returning partially in person.

19. In Spring 2021, Plaintiff's physical condition began to improve, and her doctor authorized her to return two times a week for four-hour periods each time in order to test the impact of returning to work on Plaintiff's immune system. Plaintiff continued working from home the remaining days and hours of the workweek.

20. As soon as Plaintiff returned to work, her supervisor began harassing her about when the number of days she could work would be increased and

why she was limited to four hours instead of eight hours on the days that she was working in person.

21. Plaintiff reported to the Director that her supervisor was harassing and/or discriminating against her based on her disability.

22. The Defendant has a policy that requires any claim of harassment and/or discrimination that is reported to a supervisor, be reported to Human Resources for investigation, which did not occur.

23. On December 8, 2021, Plaintiff's treating physician indicated that she could return to work full-time on December 21, 2021, but it was medically necessary for her to work remotely.

24. Since Plaintiff had been working remotely full-time from March 2020 through June 2021[1], there should have been no issue with her working remotely.

25. Defendant notified Plaintiff that she could not perform the essential functions of her job working remotely on a full-time basis.

26. Even though the intent of the doctor's note was to allow her to work remotely from home, the Defendant took the position that Plaintiff's

---

[1] In April 2021, Plaintiff began working 2 days a week for 4 hours per day in person and the remaining 3 days a week as well as the other 4 hours per day remotely.

absence from work was for an indeterminate duration.

27. Regardless, Plaintiff had been working remotely for an extended period of time while performing the essential duties of her job.

28. Plaintiff was notified on December 22, 2021, that her separation from the City was effective upon receipt of the email correspondence.

29. Even prior to COVID, other individuals were permitted to work from home and continued to do so while Plaintiff was terminated for requesting an accommodation to continue to work from home.

## **COUNT 1 DISABILITY DISCRIMINATION**

Plaintiff incorporates all prior paragraphs as if fully stated herein.

30. Plaintiff's Lupus constitutes disability within the meaning of the Americans with Disabilities Act.

31. Plaintiff was a qualified individual since she was able to perform all the essential duties of her job.

32. Due to COVID, there was a concern that Plaintiff, due to her Lupus and related autoimmune disease, should limit her contact with other individuals.

33. Accordingly, in mid-August 2020, Plaintiff requested several reasonable accommodations one of which was to work remotely.

34. Plaintiff was granted to request to work remotely but was denied the reasonable requested accommodation for additional technology, which consisted of a 2nd monitor, a detached mouse, and a more advanced version of the Adobe program.

35. Plaintiff was denied the additional request for technology even though providing those accommodations would not have created an undue hardship for Defendant.

36. Regardless, Plaintiff performed all of the essential duties of her job while working remotely from home from March August 2020 through June 2021.

37. Plaintiff was subjected to disparate treatment when she was required to perform additional terms and conditions of her remote employment that other, non-disabled employees, were not subject to performing.

38. From March 2020, Plaintiff's supervisor harassed her about returning to work in person.

39. In April 2021, Plaintiff's physical condition had improved so her doctor authorized her to return to work in person twice a week for four hours each time.

40. As soon as she returned, Plaintiff was subjected to harassment by her supervisor about when Plaintiff could increase the number of days she was

working in person and why she was limited to four hours on the days she was working in person.

41. Plaintiff reported the harassment, but no investigation took place, and no discipline was issued to her supervisor.

42. Plaintiff's condition worsened when she returned to work part-time on-site, so she requested an additional accommodation of leave from June 2021, through December 31, 2021, which was granted.

43. Prior to the expiration of her approved leave, Plaintiff's doctor authorized her to return to work full-time on December 21, 2021 but indicated that it was medically necessary that Plaintiff be permitted to work remotely.

44. Since Plaintiff could not physically return to work at the workplace, her employment was terminated.

   **WHEREFORE**. Plaintiff demands judgment for lost wages/back pay, benefits, including lost retirement, front pay, emotional distress damages, including but not limited to damage to Plaintiff's reputation and all other compensatory damages allowable under law, attorney's fees and costs and any other relief that the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues.

Dated: December 1, 2022,    Respectfully submitted,

*/s/Beth Coke*
Beth Coke
Fla. Bar. #70726
Beth@cokeemploymentlaw.com
Coke Employment Law
131 N. 2nd Street, Suite 204
Fort Pierce, Fl. 34950
Telephone: (772) 252-4230
Facsimile: (772) 252-4575
Attorney for Plaintiff