UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-cv-14398-Cannon/McCabe

RENEE HELMKE,

    Plaintiff,

v.

CITY OF PORT ST. LUCIE,

    Defendant.
_____/

### REPORT AND RECOMMENDATION

THIS CAUSE comes before the Court upon Defendant's Motion to Dismiss Plaintiff's Amended Complaint ("Motion") (DE 11), which was referred to the undersigned by United States District Judge Aileen M. Cannon (DE 12).  For the reasons set forth below, the undersigned **RECOMMENDS** that the Motion be **GRANTED IN PART AND DENIED IN PART.**

**I.  BACKGROUND**

This is a disability discrimination case against the City of Port St. Lucie ("City").  Plaintiff alleges three counts under the Americans with Disabilities Act ("ADA"):  (1) failure to accommodate, (2) hostile work environment, and (3) wrongful discharge under a disparate impact theory (DE 9).  The Court accepts the following facts as true.

Plaintiff is a disabled person who suffers from Lupus and related autoimmune issues (DE 9 ¶ 2).  From July 10, 2017, to December 22, 2021, Plaintiff worked for the City as a Special Assessment Accountant (DE 9 ¶¶ 1, 35).  In or around the beginning of the COVID-19 pandemic in March 2020, Plaintiff requested an accommodation to allow her to work remotely due to her disability (DE 9 ¶ 12).  The City granted this request (DE 9 ¶ 12).

In or around August 2020, when many staff members began to return to work in-person, Plaintiff requested permission to continue to work remotely (DE 9 ¶ 14). Plaintiff also requested further accommodations including flex time and additional technology to facilitate remote work, such as a second computer monitor, a detached mouse, and an advanced version of an Adobe software application (DE 9 ¶¶ 14-18). The City granted Plaintiff's request to continue remote work (DE 9 ¶ 19), but denied her other requests (DE 9 ¶ 20). Plaintiff's supervisor also told her it "took balls" to ask for additional technology "while [Plaintiff] chooses to work from home" (DE 9 ¶ 21).

Thereafter, at some unspecified time, the City required Plaintiff to begin submitting lists of tasks that she completed each week while working from home (DE 9 ¶ 24). The City did not impose this requirement on other similarly situated, but non-disabled, employees (DE 9 ¶ 24). In the Spring of 2021, Plaintiff's doctor authorized her to return to work in-person twice per week, but only for four-hour periods at a time (DE 9 ¶ 26). At that point, Plaintiff's supervisor began "harassing" her as to when Plaintiff would increase the number of in-person workdays (DE 9 ¶ 27).

Later, on December 8, 2021, Plaintiff's physician advised her that she could return to work full-time, but that she could *not* work in-person and could only work remotely (DE 9 ¶ 30). When Plaintiff notified the City of her doctor's restrictions, Plaintiff's supervisor took the position that Plaintiff could no longer perform the essential functions of her job while working remotely (DE 9 ¶ 32). The supervisor took this position even though Plaintiff had been performing her job remotely since the pandemic began, and the City had previously allowed other similarly situated, but non-disabled, persons to work remotely in the past (DE 9 ¶¶ 31, 34, 36). On or about December

22, 2021, the City discharged Plaintiff, purportedly due to her inability to perform the essential functions of her job while working remotely (DE 9 ¶ 35).

On May 3, 2022, Plaintiff filed a Charge of Discrimination with the Florida Commission on Human Relations and the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination based on disability (DE 1-1). The EEOC issued a Notice of Right to Sue on or about September 6, 2022 (DE 1-2).

Thereafter, on December 1, 2022, Plaintiff filed a complaint, which she amended on January 24, 2023, asserting the following claims under the ADA:

| | |
|---|---|
| Count I | Failure to Accommodate |
| Count II | Harassment Based on Disability |
| Count III | Disability Discrimination |

(DE 9 at 7, 9-10). This Motion followed, seeking dismissal of all counts pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II. LEGAL STANDARD

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court must accept a plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Although Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," a mere "formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Instead, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III. DISCUSSION

The City moves to dismiss all three counts of the operative complaint. The Court will address each count in turn.

### A. Count I: Failure to Accommodate

Count I alleges the City discriminated against Plaintiff by failing to provide reasonable accommodations for her disability (DE 9 ¶¶ 37-45). To state a prima facie claim for failure to accommodate under the ADA, a plaintiff must allege facts that show: (1) she is disabled; (2) she is a qualified individual, meaning able to perform the essential functions of the job; and (3) she was discriminated against because of her disability by way of the defendant's failure to provide a reasonable accommodation. *Russell v. City of Tampa*, 652 F. App'x 765, 767 (11th Cir. 2016) (cleaned up). Here, the City denied multiple requested accommodations, each of which the Court will address in turn.

#### 1. Plaintiff's August 2020 Requests

First, in mid-August 2020, Plaintiff requested flex time, a second monitor, a detached mouse, and a more advanced version of the Adobe program in order to facilitate her at-home work (DE 9 ¶¶ 14-16, 18). The City argues the Court should dismiss this claim because (1) it is time-barred, and (2) Plaintiff did not need the requested accommodations to perform her job. The Court agrees.

##### a. Time Bar

The ADA imposes a 300-day time limit for aggrieved plaintiffs to file a charge of discrimination. 42 U.S.C. § 2000e-5(e)(1). Because a claim for failure to accommodate involves

discrete acts of alleged discrimination rather than a continuing violation, a plaintiff must file an EEOC charge within 300 days of the denial of the accommodation; otherwise, the claim is time barred. *See Abram v. Fulton Cnty. Gov't*, 598 F. App'x 672, 676 (11th Cir. 2015).

Here, Plaintiff alleges she requested flex time and additional technology in "mid-August 2020" (DE 9 ¶¶ 14, 18, 42-43). The 300-day deadline to file an EEOC charge based on this conduct therefore expired in or around mid-June of 2021. *See* 42 U.S.C. § 2000e-5(e)(1). Plaintiff did not file her EEOC charge, however, until May 3, 2022 (DE 1-1). As such, Plaintiff cannot bring a failure-to-accommodate claim based on these allegations.

To overcome this hurdle, Plaintiff urges the Court to interpret her EEOC charge liberally and to allow the claim to proceed because it is "like or related" to other timely allegations made in her EEOC charge. The Court cannot do so. As the Supreme Court recognized, "discrete discriminatory acts are not actionable if time barred, *even when they are related to acts alleged in timely filed charges*." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (emphasis added). "Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Id.* Here, the denial of Plaintiff's request for flex time and additional technology constituted discrete discriminatory acts. Given that Plaintiff did not file an EEOC charge within 300 days of these discrete acts, she cannot pursue claims based on this conduct.

### b. Necessity of the Requested Accommodation

The Court also finds, based on Plaintiff's own allegations, that she did not need the additional technology to perform her job. "[I]f an employee does not require an accommodation to perform her essential job functions, then the employer is under no obligation to make an accommodation, even if the employee requests an accommodation that is reasonable and could be easily provided." *D'Onofrio v. Costco Wholesale Corp.*, 964 F.3d 1014, 1022 (11th Cir. 2020)

(citing *Albright v. Columbia Cty. Bd. of Educ.*, 135 F. App'x 344, 346 (11th Cir. 2005) (per curiam) ("[T]he record clearly shows that [plaintiff] did not require an accommodation to perform her job. It is undisputed that [plaintiff] performed her bus driving duties without an accommodation[.]")).

Here, Plaintiff acknowledges that she "found a way to perform the duties of her job" "even without the additional technology" (DE 9 ¶ 23). Indeed, Plaintiff does not allege she needed the technology at all, but rather, that "providing [the technology] would not have created an undue hardship for Defendant" (DE 9 ¶ 44). Such allegations fall short of a failure-to-accommodate claim. *See Beasley v. O'Reilly Auto Parts*, 559 F. Supp. 3d 1226, 1237 (S.D. Ala. 2021) ("[W]hile the provision of these accommodations might have improved [plaintiff's] employment experience, [plaintiff] has failed to point to evidence indicating that [defendant's] failure to provide any of these accommodations actually prevented him from performing the 'essential functions' of his job."). For all of these reasons, the Court recommends the Motion be granted to the extent Plaintiff seeks to pursue a failure-to-accommodate claim based on her August 2020 requests.

### 2. Plaintiff's December 2021 Request

Next, in December 2021, Plaintiff requested permission to work remotely from home due to her disability, but the City denied this request, discharging her instead (DE 9 ¶¶ 31-32, 35). Construing the complaint in a light most favorable to Plaintiff, the Court finds these allegations state a viable failure-to-accommodate claim. Plaintiff alleges "she was able to perform all the essential duties of her job with accommodations" (DE 9 ¶ 40), that she "had been working remotely for an extended period of time while performing the essential duties of her job" (DE 9 ¶ 34), and that the requested accommodation was "medically necessary" (DE 9 ¶ 30).

The City makes two arguments for dismissal, both of which the Court finds unpersuasive. First, the City argues that "being allowed to work from home in the past does not make working

remotely a reasonable accommodation, especially when the job requires interaction, coaching, and leading a team on a daily basis" (DE 18 at 4-5). The Court cannot accept this argument because the determination of Plaintiff's requested accommodation qualifies as "reasonable" poses a fact intensive question that cannot be resolved on a motion to dismiss. *See Schwarz v. Bd. of Supervisors*, No: 5:12-CV-177–Oc–34PRL, 2012 WL 7681416, *4, n.5 (M.D. Fla. Nov. 21, 2012) (noting that "whether a sign language interpreter is a reasonable accommodation or whether other alternative accommodations exist are factual disputes not properly resolved on a motion to dismiss"). The City may well prevail on this argument at a later stage of litigation, but for now Plaintiff has alleged she requested a "reasonable" accommodation and that "she was able to perform all the essential duties of her job with accommodations" (DE 9 ¶ 40). The Court accepts these allegations as true.

Next, the City points out that Plaintiff's request to work remotely forms the factual basis of both her failure-to-accommodate claim alleged in Count I, and her disparate impact claim alleged in Count III. The City argues Plaintiff cannot use the same facts to support two different claims and that her attempt to do so violates Rule 10(b)'s "one-claim-per-count" rule (DE 18 at 3).

The Court disagrees. As a general rule, plaintiffs must separate distinct legal theories of relief into separate counts. *See, e.g.*, *Rodda v. Univ. of Miami*, 542 F. Supp. 3d 1289, 1295 (S.D. Fla. 2021) (finding that complaint cannot "impermissibly contain several theories of harm under one count"). This does not mean, however, that overlapping sets of facts cannot give rise to liability under two distinct legal theories. Here, Count I alleges the City discriminated against Plaintiff by denying a "reasonable" ADA accommodation in the form of permission to work from home (DE 9 ¶¶ 42, 45). Count III, meanwhile, alleges a disparate impact claim because, at the time Plaintiff requested her accommodation, the City had previously granted permission to work

remotely to other similarly situated employees (DE 9 ¶ 53). These overlapping factual allegations, if true, can simultaneously form the basis of both a failure-to-accommodate claim and a disparate impact claim, which Plaintiff has properly alleged in separate counts. The Court therefore recommends the Motion be denied to the extent Count I seeks to pursue a claim based on the City's failure to accommodate Plaintiff's December 2021 request to work remotely.

### B. Count II: Harassment Based on Disability

Count II alleges the City repeatedly "harassed" Plaintiff (DE 9 ¶¶ 46, 48-49). The Court interprets this to be a hostile work environment claim. To state a hostile work environment claim, a plaintiff must allege facts that show (1) she belonged to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based upon her disability; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt, remedial action. *Rodda*, 542 F. Supp. 3d at 1298.

To determine whether harassment is so severe and pervasive as to alter the conditions of employment, courts look to several factors including: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Errickson v. Lakeland Reg'l Med. Ctr., Inc.*, No. 8:22-CV-533-VMC-CPT, 2022 WL 3139223, at *5 (M.D. Fla. Aug. 5, 2022) (citing *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999)). To be actionable, the work environment must be both objectively and subjectively offensive. *Schwertfager v. City of Boynton Beach*, 42 F. Supp. 2d 1347, 1366 (S.D. Fla. 1999).

Here, Plaintiff alleges that "[f]rom March 2020, Plaintiff's supervisor harassed her about returning to work in person" and that "[a]s soon as she returned, Plaintiff's supervisor continually harassed her about when Plaintiff could increase the number of days she was working in person and why she was limited to four hours on the days she was working in person" (DE 9 ¶¶ 46, 48). Plaintiff also alleges her supervisor told her it "took balls" to ask for more technology (DE 9 ¶ 21), and that her supervisor required her, while working from home, to submit a weekly list of tasks completed (DE 9 ¶ 24).

The Court finds these allegations insufficient to state a claim for hostile work environment. Overall, the allegations lack specificity or support to suggest Plaintiff suffered severe or pervasive harassment. Plaintiff does not elaborate on the frequency or substance, for example, of the conversations by which her supervisor questioned her timeline for returning to in-person work. Instead, she offers vague, conclusory allegations that her supervisor "continually harassed her" about returning to the office (DE 9 ¶¶ 46, 48). Likewise, the supervisor's use of offensive language and her demand that Plaintiff submit a weekly list of tasks performed cannot reasonably be construed as severe, physically threatening or humiliating. *See Phillips v. Harbor Venice Mgmt., LLC*, No. 8:19-CV-2379-T-33TGW, 2020 WL 2735201, at *4 (M.D. Fla. May 26, 2020) ("[S]imple teasing[,] offhand comments, and isolated incidents (unless extremely serious) do not constitute a hostile work environment"). The Court therefore recommends the Motion be granted as to Count II.

### C. Count III: Disparate Impact

Count III alleges a cause of action for "disability discrimination," which the Court interprets as a disparate impact claim. Plaintiff alleges that her physician "authorized her to return to work full-time on December 21, 2021, but indicated that it was medically necessary that Plaintiff

9

be permitted to work remotely" (DE 9 ¶ 51). Plaintiff further alleges she was capable of performing the duties of her job remotely, but "since she could not physically return to work at the workplace due to her disability, City terminated her employment" (DE 9 ¶ 52). Plaintiff alleges the City treated her differently than other similarly situated employees because "[e]ven prior to COVID, other individuals were permitted to work from home and continued to do so while Plaintiff was terminated [for not] being able to physically return to work because of her disability" (DE 9 ¶ 53).

The City urges the Court to dismiss this claim because it exceeds the scope of Plaintiff's EEOC charge. Specifically, the City argues Plaintiff "never filed a Charge of Discrimination arising from her termination" (DE 11 at 7). The Court disagrees. Plaintiff's EEOC charge expressly complained that "I was *terminated* for not being released to physically return to work …." (DE 1-1 at 3) (emphasis added).

The City next argues Count III should be dismissed to the extent it seeks to bring a disparate impact claim based on the City's demand that Plaintiff "submit a list of tasks completed each week" (DE 9 ¶ 24). Defendant argues this weekly task list does not rise to the level of an "adverse employment action" within the meaning of the ADA. The Court agrees. *See Juback v. Michaels Stores, Inc.*, 143 F. Supp. 3d 1195, 1206 (M.D. Fla. 2015) ("[T]rivial harms and petty slights . . . unconnected to any tangible job consequences do not constitute an adverse employment action.") (cleaned up). The Court therefore recommends the Motion be denied as to Count III, but only to the extent Count III seeks to bring a disparate impact claim based on Plaintiff's discharge from employment.

**IV.    RECOMMENDATION & NOTICE OF RIGHT TO OBJECT**

For the reasons stated above, the undersigned recommends that the Motion be **GRANTED IN PART AND DENIED IN PART** as follows:

1. As to Count I, the Motion should be **DENIED** as to the City's failure to accommodate Plaintiff's December 2021 request to work remotely, but **GRANTED** as to all other requests for accommodation.

2. As to Count II, the Motion should be **GRANTED**.

3. As to Count III, the Motion should be **DENIED** as to Plaintiff's discharge, but **GRANTED** as to all other allegedly adverse employment actions.

4. The Court further recommends that all dismissals recommended here be with prejudice, as Plaintiff has had a previous opportunity to amend her complaint.

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with United States District Judge Aileen M. Cannon.  Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1.

**RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach in the Southern District of Florida, this 11th day of April 2023.

RYON M. MCCABE
U.S. MAGISTRATE JUDGE